Elwood **WEBBER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 14–99–00234–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 24, 2000.

---

Stephen Gustitis, College Station, for appellants.

William D. Ballard, Jr., Bryan, for appellees.

Panel consists of Justices ANDERSON, FROST, and LEE.*

## OPINION

KEM THOMPSON FROST, Justice.

Charged with the offense of deadly conduct, the appellant, Elwood Webber was tried before a jury and found guilty. The court assessed punishment at 365 days in the Brazos County Jail. In two points of error, the appellant contends: (1) he was denied due process of law when the trial court failed to charge the jury on the law of presumptions pursuant to section 2.05 of the Texas Penal Code, and (2) he was denied effective assistance of counsel when trial counsel failed to object to the erroneous jury charge. We affirm.

### FACTUAL BACKGROUND

The complainant, Eletha Steptoe, returned from work to find her house in disarray and the appellant, her common law husband, lying on the couch. Ms. Steptoe, who had planned to host a birthday party for her children at her home, became upset and began to mumble and complain about the messy state of the house. While running the water to clean the dishes, Ms. Steptoe realized that the

---

* Senior Justice Norman Lee sitting by assignment.

appellant was pointing a gun at her head. He called her a "bitch" and said, "*I heard everything you was saying. Do you know I will kill you?*" Ms. Steptoe turned her head and tried to explain herself; then, the appellant left the room. Grabbing her car keys, Ms. Steptoe ran to the corner and drove her car to a nearby convenience store to call the police. The entire incident lasted only one or two minutes.

The appellant was arrested and charged with the offense of deadly conduct. During the jury trial that followed, Ms. Steptoe and the police detective who investigated the case were the only witnesses to testify.

### JURY CHARGE

In his first point of error, the appellant contends he was denied due process of law when the trial court failed to charge the jury on the law of presumptions pursuant to section 2.05 of the Texas Penal Code. In addressing the appellant's contentions, we first determine whether the jury charge contained error and then consider whether sufficient harm resulted to require reversal. *See Mann v. State*, 964 S.W.2d 639, 641 (Tex.Crim.App.1998) (en banc).

Section 2.05(2) of the Texas Penal Code, entitled "Presumption", provides:

(2) if the existence of the presumed fact is submitted to the jury, the court shall charge the jury, in terms of the presumption and the specific element to which it applies, as follows:

(A) that the facts giving rise to the presumption must be proven beyond a reasonable doubt;

(B) that if such facts are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists, but it is not bound to so find;

(C) that even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged; and

(D) if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not consider the presumption for any purpose.

TEX. PEN.CODE ANN. § 2.05(2) (Vernon 1994).

The offense of deadly conduct includes a presumption. Deadly conduct occurs when a person "recklessly engages in conduct that places another in imminent danger of serious bodily injury." TEX. PEN. CODE ANN. § 22.05(a) (Vernon 1994). "Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded." TEX. PEN.CODE ANN. § 22.05(c) (Vernon 1994). Therefore, when a trial court includes a section 22.05(c) instruction on a presumed fact in the jury charge, the Texas legislature requires the trial court to include a section 2.05(2) instruction.

■ Additionally, both the United States and Texas Constitutions also require the trial court to include a section 2.05(2) instruction when including a section 22.05(c) instruction on a presumed fact; without a section 2.05(2) instruction, the section 22.05(c) instruction would contain a mandatory presumption. Mandatory presumptions are unconstitutional. *See Willis v. State*, 790 S.W.2d 307, 309 (Tex.Crim. App.1990) (en banc).

■■ A *mandatory* presumption compels the jury to find an essential element of the offense upon proof of a basic fact unless the accused presents evidence to rebut the presumption. *See Regalado v. State*, 872 S.W.2d 7, 10 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd). If the state proves the predicative facts, charges containing conclusive or rebuttable presumptions lessen the state's burden of proof in violation of due process by either removing the presumed element from the case entirely or impermissibly shifting the burden to the defendant. *See, e.g., Fran-*

cis v. Franklin, 471 U.S. 307, 317 & 325, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) (finding jury instruction violated due process when it created a mandatory rebuttable presumption shifting the burden of proof to the defendant and did not, as a whole, explain or cure this error); Sandstrom v. Montana, 442 U.S. 510, 523–24, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (finding jury instruction violated due process when it included a presumption that lessened the state's burden to prove the essential elements of the case beyond a reasonable doubt). Charges which include phrases such as "are presumed" or "the law presumes" create mandatory presumptions. See Francis, 471 U.S. at 316, 105 S.Ct. 1965; Sandstrom, 442 U.S. at 532–24, 99 S.Ct. 2450. Section 22.05(c) creates a mandatory presumption because it states "recklessness and danger are presumed . . . ."

■ By contrast, *permissive* presumptions are generally constitutional. See Willis, 790 S.W.2d at 310. Permissive presumptions allow, but do not require, the jury to infer the element from the predicative facts. See id. To transform mandatory presumptions into permissive presumptions and thereby pass constitutional muster, the legislature enacted Texas Penal Code section 2.05. See id. Consequently, when a trial court gives a section 22.05(c) instruction on a presumed fact, failure to include a section 2.05 instruction gives rise to both statutory and constitutional error.

■ In this case, the trial court instructed the jury on the presumptions in section 22.05(c) but did not instruct the jury on the effect of the presumption as mandated by section 2.05(2). Specifically, the jury charge read:

> Our law provides that a person commits the offense of Deadly Conduct if he recklessly engages in conduct that places another in imminent danger of serious bodily injury.

> Recklessness and danger *are presumed* if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded.

(emphasis added). Because this charge created a mandatory presumption, the trial court committed both statutory and constitutional error by omitting a section 2.05(2) instruction. However, the appellant did not object to the error.

■ Generally, to preserve error, a party must object. See Tex.R.App. P. 33.1(a). The Court of Criminal Appeals carved out an exception to this general rule for jury charge error in Almanza v. State, 686 S.W.2d 157 (Tex.Crim.App.1985) (en banc) (op. on reh'g). In interpreting Article 36.19 of the Texas Code of Criminal Procedure, which governs review of the jury charge on appeal, the Almanza court held that if the defendant does not object to error in the jury charge, he must show the error was fundamental in order to complain about it on appeal. 686 S.W.2d at 171. Fundamental error in the jury charge is error that is so egregious and causes such harm as to deprive the accused of a fair and impartial trial. See Taylor v. State, 7 S.W.3d 732, 736 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (citing Almanza, 686 S.W.2d at 171).

■ As a threshold matter, we must consider whether the error in this case is error to which Almanza applies. Jury charge error is defined in Article 36.19 as the disregarding of various statutory provisions, namely Articles 36.14–36.18. Article 36.14 requires the trial judge to deliver a charge setting forth the law applicable to the case. Tex.Code Crim. Proc. Ann. art. 36.14 (Vernon 1981). Having already determined that section 2.05 is a required instruction given the other law on which the jury was instructed, we find that the trial court's failure to include this instruction disregards Article 36.14 and thus is jury charge error. Before determining whether this error is fundamental, i.e., caused egregious harm, we address the

state's contention that the appellant waived his claim of jury charge error.

### Waiver of Jury Charge Error

The state contends the appellant waived his claim of fundamental error by affirmatively approving the jury charge. In making this argument, the state cites several recent cases in which various courts of appeals have held that a defendant can waive his right to complain about a fundamental error in the jury charge by affirmatively approving the charge in the lower court. *See Ly v. State*, 943 S.W.2d 218 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd); *Reyes v. State*, 934 S.W.2d 819 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd); *McCray v. State*, 861 S.W.2d 405 (Tex.App.—Dallas 1993, no pet.). This court followed suit in *McCain v. State*, 995 S.W.2d 229 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd, untimely filed). These cases, however, appear to contradict *Almanza*, which rejected the waiver argument fifteen years ago.

We are unpersuaded by the state's waiver by "affirmative approval" argument for three reasons. First, it cannot withstand a careful reading of *Almanza.* Second, the cases that have accepted this waiver argument are not consistent with our reading of *Almanza* or, in the alternative, are distinguishable. Third, we find the right at issue in this case either cannot be waived or must be expressly waived.

### *Almanza's Rejection of the Waiver Argument*

■ First, we reject the waiver argument based on a studied reading of *Almanza.* Before *Almanza*, there were three schools of thought as to whether Article 36.19 and its predecessor set the standard for fundamental error or for ordinary reversible error. 686 S.W.2d at 161. One of them reasoned that Article 36.19 sets the standard for ordinary reversible error and "holds that … there would never be a reversal for unobjected to error in the jury charge." *Id.* Thus, under this

school's reasoning, error to which no objection is voiced is waived. The Court of Criminal Appeals explicitly rejected this notion when it determined that Article 36.19 contains the standard for *both* fundamental error and ordinary reversible error. *See id.* at 171. The *Almanza* court held that an error to which no objection was made and which the court found to be fundamental would be reversed if the error caused egregious harm. *Id.* The *Almanza* court made no mention of a special type of "unobjected to error" created when the accused affirmatively approves the jury charge, nor did the *Almanza* court hold that this type of error, unlike regular jury charge errors to which no objections are made, could be waived. It is clear from a plain reading of *Almanza* that the Court of Criminal Appeals already has rejected the notion that all unobjected to error is waived. Furthermore, the Court of Criminal Appeals has continued to apply *Almanza* and use the egregious harm test for unobjected to errors without mentioning waiver by affirmative approval of the jury charge. *See, e.g., Medina v. State*, 7 S.W.3d 633 (Tex.Crim.App.1999) (en banc), *cert. denied,* —— U.S. ——, 120 S.Ct. 1840, 146 L.Ed.2d 782 (2000); *State v. Toney*, 979 S.W.2d 642 (Tex.Crim.App.1998) (en banc); *Mann v. State*, 964 S.W.2d 639 (Tex.Crim.App.1998) (en banc); *Hutch v. State*, 922 S.W.2d 166 (Tex.Crim.App.1996) (en banc).

### *Cases Holding Affirmative Approval of the Jury Charge Waive Fundamental Error*

Second, we reject the waiver argument because the cases that have accepted it are either incorrect or distinguishable. The courts in *McCray* and *Reyes* found *Almanza* did not apply because *Almanza* did not address errors that were affirmatively approved. *See McCray*, 861 S.W.2d at 409; *Reyes*, 934 S.W.2d at 820. *McCray* summarily concluded that *Almanza* did not apply to affirmatively accepted jury charges. 861 S.W.2d at 409. We disagree

with this conclusion in *McCray*. *Reyes* rationalized that there is

> a difference between those situations in which the appellant did not request that an instruction be included in the charge or did not object to the omission of· an instruction in the charge and situations where the appellant *affirmatively approves the charge as written*, telling the trial judge that he sanctions the charge. An appellant should not be able to affirmatively approve a judge's charge, perhaps for sound strategic reasons to which the appellate court may never be privy, have it submitted to the jury, and then be able to attack the charge on appeal on the ground of fundamental error.

934 S.W.2d at 820.

We fail to see any meaningful distinction between a failure to object to the jury charge and an affirmative approval of the charge in the context of *Almanza*. As a practical matter, most trial judges ask if the defense has any objections to the jury charge as a matter of course. Once the defense responds in the negative to this inquiry, the defense has "affirmatively approved" the charge. Under *Reyes* logic, the situation in which a defendant actually fails to object without affirmatively approving the charge would be virtually non-existent. Such a waiver rule would effectively negate the egregious harm analysis mandated by *Almanza* because every case in which the defense failed to object would also be one in which the defense affirmatively approved the charge.

We also disagree with the implication in *Reyes* that while a defendant might have a strategic reason for affirmatively approving the jury charge, he would not have a strategic reason for failing to object to it. In distinguishing a failure to object from an affirmative approval, the *Reyes* court reasoned that because the defendant might have been motivated by strategy when he told the trial judge he sanctioned the charge, he should not be able to complain of fundamental error in the charge on

appeal. *Id.* The *Reyes* court did not explain why this reasoning is limited to affirmative approvals, nor did it point out why or how the two scenarios are dissimilar *vis a vis* strategy decisions. Logic suggests that defense counsel might be just as motivated by strategy in failing to object as in affirmatively voicing approval to the charge. Indeed, a lawyer quietly sitting by, watching the judge read an incorrect charge may plot an appeal just as well as the one who tells the judge she has no objections to it. For this additional reason, we reject the reasoning in *Reyes*.

█ Although we disagree with the logic of *McCray* and *Reyes*, we nonetheless agree with their conclusion that *Almanza* does not apply in those situations; however, the reason *Almanza* does not apply is because no jury charge error was committed. The Court of Criminal Appeals has held that none of the statutory provisions set out in Article 36.19 are disregarded by a trial court's failure to *sua sponte* instruct the jury on a defensive issue. *See Posey v. State*, 966 S.W.2d 57, 62 (Tex.Crim.App. 1998). The *Posey* court recognized that Article 36.14, which requires the charge to include the law applicable to the case, is the only provision that might be disregarded. *Id.* at 61. However, a defensive issue is not part of the law applicable to the case unless the accused requests it to be or objects to its omission. *See id.* at 62. In both *McCray* and *Reyes*, the error in the charge was that the trial court failed to *sua sponte* charge the jury on a defensive issue. *See McCray*, 861 S.W.2d at 409 (the trial court specifically asked the defendant if he wanted an instruction on self-defense which the defendant refused); *Reyes*, 934 S.W.2d at 820 (the appellant complained that the charge did not instruct the jury on his right to arm himself but agreed generally to the charge). Failing to *sua sponte* charge the jury on a defensive issue does not disregard a statutory provision laid out in Article 36.19, and for this reason, jury charge error did not occur. Therefore,

because the court did not commit jury charge error, *Almanza* did not apply.

 The First Court of Appeals, following *McCray* and *Reyes*, determined in *Ly* that an appellant could not affirmatively approve a jury charge lacking a parole law instruction and then attack it on appeal. *See Ly*, 943 S.W.2d at 221. More recently, this court cited *Ly* in reaching the same conclusion. *See McCain*, 995 S.W.2d at 243. Upon further study, we believe the "affirmative approval" theory that underlies the decisions in *Ly* and *McCain* misses the mark. *Ly* based its reasoning on two cases, *McCray* and *Reyes*, whose underlying logic we already have rejected. Moreover, even if *McCray*, *Reyes*, *Ly*, and *McCain* are not amiss because they are based on faulty logic, they are distinguishable from the facts presented in the record now before us. *McCray* and *Reyes* involved the omission of a defensive instruction which is not required by statute or by the federal or state constitution. *Ly* and *McCain* involved the omission of a parole law instruction, a mere statutory requirement, not the omission of an essential element of the case that is a constitutional as well as a statutory requirement.[1] The due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In a criminal proceeding, the state is required to prove beyond a reasonable doubt the essential elements of a crime. *See* Tex.Code Crim. Proc. Ann. art. 38.03 (Vernon Supp.1998); *Short v. State*, 874 S.W.2d 666, 667 (Tex. Crim.App.1994) (en banc); *Smith v. State*, 986 S.W.2d 86, 87 (Tex.App.—Houston [1st Dist.] 1999, pet. ref'd). It is "important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper fact finder of his guilt with utmost certainty." *In re Winship*, 397 U.S. at 364, 90 S.Ct. 1068. If we find that a defendant can waive his constitutional and statutory right to have the state prove its case beyond a reasonable doubt, we open the doors to a society in which an individual can be tried and sentenced on minimal or no evidence. We will not reach a holding that undermines the essence of *Almanza* by finding that a defendant can waive unobjected to fundamental error by affirmatively approving an incorrect jury charge.

### Express Waiver

 Finally, even if *Almanza* could be read to hold that a defendant can generally waive unobjected to error by affirmatively approving the incorrect jury charge, error still would not be waived here because either the error cannot be waived or there was no *express* waiver. The Court of Criminal Appeals has held that there are three types of rights: (1) absolute requirements and prohibitions which cannot be waived; (2) rights which must be implemented unless expressly waived; and (3) rights to be implemented upon request. *See Ieppert v. State*, 908 S.W.2d 217, 219 (Tex.Crim.App.1995) (en banc) (citing *Marin v. State*, 851 S.W.2d 275, 278–79 (Tex.Crim.App.1993) (en banc), *overruled on other grounds*, *Cain v. State*, 947 S.W.2d 262 (Tex.Crim.App.1997) (en banc)); *Oldham v. State*, 5 S.W.3d 840, 846 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd). Most rights are in the final category, even those assured by due process. *See Ieppert*, 908 S.W.2d at 219. However, the second category contains rights "so fundamental to the proper functioning of

---

1. Jury charge error covered by *Almanza* occurs when a trial court has a duty to instruct without a request or objection from either party and fails to do so. *See Posey*, 966 S.W.2d at 61 n. 9. The legislature dictates that a judge "shall charge the jury" on parole law.

Tex.Code Crim. Proc. Ann. art. 37.07 § 4 (Vernon Supp.2000). Therefore, unlike *McCray* and *Reyes*, *Almanza* applies to errors committed in *Ly* and *McCain* by not charging the jury on parole law.

our adjudicatory process as to enjoy special protection in the system." *Marin*, 851 S.W.2d at 278. These rights are not forfeitable without an *express* waiver. These rights include the right to counsel and the right to a jury trial. *See id.* at 279.

 The first category includes "both jurisdictional prerequisites to the exercise of judicial authority and nonjurisdictional fundamentals of lawmaking and adjudication" which are independent of litigants' wishes. *Ieppert*, 908 S.W.2d at 219 (citing *Marin*, 851 S.W.2d at 279). This category encompasses "rights that are statutorily or constitutionally mandated, or are otherwise not optional with the parties." *Cockrell v. State*, 933 S.W.2d 73, 95 (Tex.Crim.App.1996) (Maloney, J. concurring) (citing, among others, the following examples: *Stine v. State*, 908 S.W.2d 429 (Tex.Crim.App.1995) (en banc) (finding constitutional provision requiring judge to conduct proceedings in county seat where case pending is mandatory and nonwaivable); *Ieppert*, 908 S.W.2d at 220 (finding constitutional *ex post facto* prohibition is fundamental systemic requirement that cannot be waived)). The state is required, both by statute and the constitution, to prove the essential elements of a crime beyond a reasonable doubt. *See* TEX.CODE CRIM. PROC. ANN. art. 38.03 (Vernon Supp. 1998); *In re Winship*, 397 U.S. at 364, 90 S.Ct. 1068. In *Ieppert*, the Court of Criminal Appeals held that the *ex post facto* prohibition is a categorical prohibition directed by the people and their government and, short of a constitutional amendment, cannot be waived any more than the right not to be imprisoned for conduct which does not constitute a crime. 908 S.W.2d at 220. The right not to be imprisoned unless the state proves the essential elements of an offense beyond a reasonable doubt is included in the broader right not to be imprisoned for conduct which does not constitute a crime. Therefore, the

right to have the state prove each element of its case beyond a reasonable doubt is an absolute requirement which cannot be waived.

 Even if this is not an absolute right, and is instead only a right that must be implemented unless expressly waived (second category),[2] the appellant did not expressly waive his right to have the state prove each element beyond a reasonable doubt. The record shows the trial court merely stated to the defense, "*I understand that you have no objections to the charge as it's presently written?*" The defense responded, "*[t]hat's right, your Honor.*" For this response to be deemed an express waiver, the trial court would have needed to inquire if the defense wanted a section 2.05(2) law of presumptions instruction and then receive a negative response to that inquiry. The trial court made no such inquiry, and the appellant made no statement expressly indicating his desire to waive a section 2.05(2) law of presumptions instruction. Consequently, the appellant did not give an express waiver of his right. More importantly, he did not waive error.

In conclusion, we find that (1) error cannot be waived here based on a careful reading of *Almanza;* (2) cases which have accepted the waiver argument are incorrect, or, in the alternative, distinguishable; and (3) the right at issue either cannot be waived or must be expressly waived.

### Harm Analysis

 Having found the error in the charge cannot be waived by the appellant's affirmative approval of the jury charge, we now turn to consider whether the error was fundamental, i.e., caused egregious harm. Errors that "result in egregious harm are those which affect 'the very basis of the case,' deprive the defendant of a 'valuable right,' or 'vitally affect a defensive theory.'" *Hutch*, 922 S.W.2d at 171

---

**2.** We are certain that the right to have the state prove each element of its case beyond a reasonable doubt is protected at least as much as the right to counsel and the right to a jury trial, which are rights in the second category. *See Ieppert*, 908 S.W.2d at 219.

(quoting *Almanza,* 686 S.W.2d at 172). To determine if the defendant suffered egregious harm, we consider: (1) the entire charge, (2) the state of the evidence, including contested issues, (3) arguments of counsel, and (4) any other relevant information. *See id.,* 922 S.W.2d at 171; *Taylor,* 7 S.W.3d at 736. The purpose of the review is to find actual harm to the accused, not mere theoretical harm. *See Almanza,* 686 S.W.2d at 174.

■■■ First, we consider the entire jury charge. While the charge contains general language that the defendant is presumed innocent and that the state must prove every element of the offense beyond a reasonable doubt, this language alone is not sufficient to remove harm. The United States Supreme Court has held that general language in the charge instructing the jurors that the defendant is presumed innocent and that the state is required to prove every element of the offense beyond a reasonable doubt is not inconsistent with a conclusive or burden-shifting presumption; the jury could interpret the instructions as indicating that although intent must be shown beyond a reasonable doubt, the proof of the act, as the predicative fact for the presumption of intent, constituted proof beyond a reasonable doubt unless the defendant persuaded the jury otherwise. *See Francis,* 471 U.S. at 319, 105 S.Ct. 1965. Consequently, these general instructions do not remedy the error in the challenged portion of the charge. *See id.* Therefore, the jury charge as a whole does not remedy or lessen the harm suffered.

Next, we consider the state of the evidence, including contested issues and the weight of the probative evidence. This factor focuses on whether the jury charge error relates to a contested issue. *See Hutch,* 922 S.W.2d at 173. In considering the state of the evidence, we give special attention to the statement of the court of appeals in 1890, as approved by the *Almanza* court:

We are to look to the whole record bearing upon the subject. What was the nature of the testimony supporting the verdict? Was it cogent and overwhelming? What was the character of the testimony presenting the phase or theory of the case omitted to be noticed in the charge, and upon which omission error is assigned? Was it at all reasonable? Did it present a theory which a reasonable mind could entertain, or was it supported by such testimony as was remotely calculated to destroy the State's case when considered in connection with the other testimony in the case, as well as the charge as a whole?

686 S.W.2d at 173–74 (citing *Davis v. State,* 28 Tex.App. 542, 13 S.W. 994, 995 (1890)).

Whether the appellant was reckless and placed Eletha Steptoe in danger was the crux of the state's case. The appellant challenged the state's evidence on "danger" by arguing that there was no evidence that the gun was capable of being fired. The offense of deadly conduct, however, does not require that the firearm must be fireable but merely that "the actor knowingly pointed a firearm at or in the direction of another." TEX. PEN.CODE ANN. § 22.05(c) (Vernon 1994). The state only needed to show the appellant used a firearm. To be a firearm, a device must be "designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use." TEX. PEN.CODE ANN. § 46.01(3) (Vernon Supp.2000). The gun's fireability was not in issue.

The appellant also challenged the "danger" requirement by arguing the state did not prove the gun was real and not a toy.[3] The record contains evidence that the gun was real. There was no evidence to support the notion that the gun might not have been real but instead was only a toy. Ms. Steptoe testified that her children did not own toy pistols. She testified the gun

---

3. A toy gun would not meet the "firearm" requirement.

was not a toy pistol because she "heard it click." She also testified that the appellant pointed the gun at her head and said, "[d]o you know I will kill you?"

In his closing argument, defense counsel pointed to the following facts to show the gun may not have been real: (1) Ms. Steptoe stated the appellant did not leave the scene yet the police did not locate a gun; (2) there was conflicting testimony about whether the gun was a .38 revolver or .380 automatic; and (3) Ms. Steptoe never saw the gun, either before or after the incident. However, there was no evidence that a toy gun was or even might have been in the house or within the appellant's possession on the date of the offense. The appellant's suggestion that the gun was a toy was not based on any evidence and so is not a theory a reasonable mind could entertain on the facts of this case. The overwhelming weight of the evidence shows a firearm was used.

Recently, courts of appeals have held that where the great weight of the evidence supports the facts giving rise to the presumption, egregious harm has not occurred. *See Rudd v. State*, 921 S.W.2d 370, 373 (Tex.App.—Texarkana 1996, pet. ref'd) (finding great weight of the evidence supported the facts giving rise to the presumption even though there was evidence to the contrary); *Maldonado v. State*, 902 S.W.2d 708, 713 (Tex.App.—El Paso 1995, no pet.) (finding implicit concession by the appellant and overwhelming weight of the evidence supported the facts giving rise to the presumption). The overwhelming weight of the evidence shows the appellant knowingly pointed a firearm at Ms. Steptoe, i.e., the facts giving rise to the presumption. Therefore, on this record, we find egregious harm has not occurred. Accordingly, we overrule the appellant's first point of error.

### Ineffective Assistance of Counsel

In his second point of error, the appellant contends he was denied effective assistance of counsel when trial counsel failed to object to the erroneous jury charge. We evaluate claims of ineffective assistance of counsel under the two prong analysis articulated in *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App. 1999) (en banc). In order to prevail on this claim, the appellant must show: (1) trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) this deficient performance resulted in prejudice to the appellant. *See id.* The appellant must prove his claim by a preponderance of the evidence. *See Jackson v. State*, 973 S.W.2d 954, 956 (Tex.Crim.App.1998) (en banc).

In any case analyzing the effective assistance of counsel, we begin with the strong presumption that counsel was competent. *See Thompson*, 9 S.W.3d at 813; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994) (en banc). We presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *See Jackson*, 877 S.W.2d at 771. The appellant has the burden of rebutting this presumption by presenting evidence illustrating why trial counsel did what he did. *See id.* The appellant cannot meet this burden if the record does not specifically focus on the *reasons* for the conduct of trial counsel. *See Osorio v. State*, 994 S.W.2d 249, 253 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd); *Kemp v. State*, 892 S.W.2d 112, 115 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). When the record is silent as to counsel's reasons for his conduct, finding counsel ineffective would call for speculation by the appellate court. *See Gamble v. State*, 916 S.W.2d 92, 93 (Tex.App.—Houston [1st Dist.] 1996, no pet.) (citing *Jackson v. State*, 877 S.W.2d at 771).

Here, the record is silent as to defense counsel's strategy. We will not speculate in hindsight as to the reasons for trial counsel's decisions. Therefore, the

appellant cannot make the requisite showing under the first prong of *Strickland.* Furthermore, the second prong of *Strickland* is not met because we already have determined that the error in the jury charge did not cause egregious harm. There is no evidence to support the appellant's theory that he used a toy gun. Thus, the appellant has not shown a reasonable probability that but for counsel's alleged unprofessional performance, the result of the proceeding would have been different. Having found that neither the first or second prongs of *Strickland* are met, we overrule the appellant's second point of error. The judgment of the trial court is affirmed.

J. ANDERSON, concurs in result only.